IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MICHAEL H. HOLLAND, et al.,

        Plaintiffs,

v.                                 CIVIL ACTION NO.  2:05-cv-00535

LARRY CLINE, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is the plaintiffs' motion for summary judgment [Docket 20].  The defendants did not respond to the plaintiffs' motion.  For the foregoing reasons, the court **FINDS** that no genuine issue of material fact  remains and **GRANTS** the plaintiffs' motion.  Accordingly, the Court **DIRECTS** the Clerk to enter judgment in favor of the plaintiffs.

## I. Background

The plaintiffs in this case are Trustees of the 1992 United Mine Workers of America Benefit Plan ("1992 Plan"), a multi-employer health-benefit fund established under the National Coal Industry Retiree Health Benefit Act of 1992 ("Coal Act"), 26 U.S.C. §§ 9701—9712, 9721—9722 (2000).  The plaintiffs sued for non payment of monthly per beneficiary premium contributions and annual prefunding premiums allegedly owed jointly and severally by defendants Larry Cline ("Cline") and San Lin Corporation ("San Lin") under the Coal Act.

The plaintiffs' Complaint alleges that defendants are "related persons," as defined by Section 9701(c)(2)(A) of the Coal Act, to Breezy Point Mining, Inc. ("Breezy Point"), a non party former coal operator to whom the eligible beneficiaries in question were attributed.  26 U.S.C. §

9701(c)(2)(A).  Plaintiffs further contend that San Lin and Cline, as related persons, are jointly and severally liable for any amounts owed to the 1992 Plan for the eligible beneficiaries attributed to Breezy Point.  *Id.*  §§ 9704(a), 9712(d)(4).  This is the third suit the plaintiffs have initiated to compel the defendants to comply with their Coal Act obligations.

## II.  The Coal Act

The National Bituminous Coal Wage Agreements ("NBCWA") are collective bargaining agreements between the Bituminous Coal Operators' Association and the United Mine Workers of America ("UMWA") that promise healthcare benefits to active and retired coal miners.  *Id.* § 9701(b)(3).  The 1992 Coal Act assesses premiums against "signatory operators"—coal operators who sign a NBCWA and remain "in business."[1]  *Id.* §§ 9701(b)(1), (c)(1).  The premiums are paid into a trust fund that finances the promised healthcare benefits.[2]  "The number of eligible beneficiaries" assigned to a signatory operator determines the amount the operator must pay to cover the health and death benefits of active and retired miners.  *Id.* § 9703(b)(2).  If a signatory coal operator is no longer in business, liability for payment of the premiums passes to any "related person."  *Id.* §§ 9706(a), 9701(c)(2)(A).  Where there is more than one "related person," the parties are responsible, jointly and severally, for any liabilities the last signatory operator owes to the 1992 Plan.  *Id.* §§ 9704(a), 9712(d)(4).

## II.  Summary Judgment Standard of Review

---

[1]  "[I]n business" is defined as any person who "conducts or derives revenue from any business activity, whether or not in the coal industry." 26 U.S.C. §§ 9706(a), 9701(c)(7) (2001).

[2]  The 1992 Plan is the trust at issue in this case.

To obtain summary judgment, the moving party must show that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor."  *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position.  *Anderson*, 477 U.S. at 252.

The defendants did not respond to the plaintiffs' summary judgment motion.  Although the Federal Rules of Civil Procedure provide for default procedures in Rule 55, those procedures do not govern the failure of a party to respond to a summary judgment motion.  *Custer v. Pan Am. Life Ins. Co.,* 12 F.3d 410, 415 (4th Cir. 1993).  "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" *Id.* at 416.  Therefore, even though the motion is unopposed, the court will review the pending

motion under its usual summary judgment standard to determine whether the plaintiffs are entitled to judgment as a matter of law.

### IV.  Res Judicata Analysis

The doctrine of res judicata operates "to promote judicial efficiency and foster reliance on adjudications by putting an end to a cause of action once litigated." *U.S. v. Tatum,* 943 F.2d 370, 381 (4t h Cir. 1991).  As stated by the Supreme Court in *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 84 (1984), the preclusive effect of the res judicata doctrine "reflects a variety of concerns, including notions of comity, the need to prevent vexatious litigation, and a desire to conserve judicial resources."

"Res judicata includes the related concepts of claim preclusion and issue preclusion." *Babb v. U.S. Drug Enforcement Agency,* 146 F. App'x. 614, 621 (4th Cir. 2005).  Claim preclusion "bars claims in later litigation arising from the same cause of action as an earlier case in which final judgment on the merits has been entered." *Id.* at 621—22.  Issue preclusion "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation." *Sedlack v. Braswell Servs. Group, Inc.,* 134 F.3d 219, 224 (4th Cir. 1998) (quoting *Ramsay v. INS,* 14 F.3d 206, 210 (4th Cir. 1994)).  The parties previously litigated several issues critical to the present suit in *Holland v. Cedar Creek Mining, Inc.,* No 2:99-0235 (S.D. W.Va. Jan. 14, 2002) ("*Cline I*") (unpublished).  I will, therefore, address the applicability of claim and issue preclusion to the instant case.

### A. *Claim Preclusion*

In *Montana v. United States*, 440 U.S. 147, 153 (1979), the Supreme Court described the preclusive effect of the res judicata doctrine when it stated, "a final judgment on the merits in a prior suit bars further claims by parties or their privies based on the same cause of action." The "essential elements" of claim preclusion are: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Nash County Bd. of Educ. v. Biltmore Co.,* 640 F.2d 484, 486 (4th Cir. 1981).

Claim preclusion operates to prevent parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding. If the cause of action did not exist at the time of the prior proceeding, claim preclusion does not apply. As the Supreme Court stated in *Lawlor v. Nat'l Screen Serv. Corp.,* 349 U.S. 322, 328 (1955), while a previous judgment "precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." To constitute the same cause of action, two suits must arise from the same transaction or series of transactions or the same core of operative facts. *Harnett v. Billman,* 800 F.2d 1308, 1312 n.1 (4th Cir. 1986) (noting the "identity of the cause of action" test under federal law requires the claims "aris[e] out of the same transaction or series of transactions").

Claim preclusion does not bar the defendants from relitigating their alleged failure to make requisite payments under the Coal Act because the cause of action in the first proceeding is not identical to the cause of action in the instant case. During the *Cline I* adjudication, the parties did not anticipate that the defendants would fail to make the requisite payments to the 1992 Plan. Additionally, *Cline I* and the instant case address different time periods of nonpayment and

altogether different instances of defendants' alleged nonpayment of premiums.  The Supreme Court's analysis in *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Calif., Inc.,* 522 U.S. 192 (1997), is helpful to understand the circumstances of the present case.  In *Bay Area Laundry,* the Supreme Court evaluated employers' obligations under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA").  522 U.S. 192, 195 (1997); *See* 29 U.S.C. §§ 1381—1461 (2000).  The MPPAA requires employers who withdraw from underfunded multiemployer pension plans to pay "withdrawal liability" to protect the financial solvency of such plans.  *Id.*  The Court held that because the plan "cannot sue to recover *any* withdrawal liability until the employer misses a scheduled payment" and it is generally not until the employer misses "a particular payment" that the plan can bring action to "collect *that payment*," it is, therefore, logical to conclude that "'a new cause of action,' carrying its own limitations period, 'arises from the date each payment is missed.'"  *Bay Area Laundry,* 522 U.S. at 208 (citing *Board of Trustees of Dist. No. 15 Machinists' Pension Fund v. Kahle Eng'g Corp.,* 43 F.3d 852, 857 (3d Cir. 1994) (emphasis in original)).

The MPPAA is similar to the Coal Act; the defendants both in *Bay Area Laundry* and the instant case have the statutorily dictated responsibility to make scheduled payments to a pension plan or else pay withdrawal liability.[3]  Additionally, the plaintiffs in each suit cannot sue for withdrawal liability until the defendants fail to make a statutorily required payment.  Because a new cause of action arises on each date payment is not made, and the claim is not ripe until a payment is missed, the defendants' failure to pay premiums to the Trustees following the *Cline I* litigation

---

[3]A breach of obligations under the Coal Act , like a breach of ERISA obligations, gives rise to withdrawal liability. 26 U.S.C. § 9721 (2000).

comprises a cause of action neither existent nor anticipated at the time of the first proceeding. It is contrary to the goals of claim preclusion to bar the defendants from litigating their alleged breach of the agreement made with the 1992 Plan. The plaintiffs' claim for summary judgment on the basis of claim preclusion is therefore meritless.

## B. *Issue Preclusion*

Unlike claim preclusion, issue preclusion, also known as collateral estoppel, applies to previously litigated issues or facts when the later litigation arises from a new, untried cause of action. Issue preclusion "operates to bar subsequent litigation of those legal and factual issues common to both actions that were 'actually and necessarily determined by a court of competent jurisdiction' in the first litigation." *In re Varat Enters., Inc.,* 81 F.3d 1310, 1315 (4th Cir. 1996) (quoting *Montana v. United States,* 440 U.S. 147, 153 (1979)). Therefore, collateral estoppel applies only if: (1) the issue sought to be precluded is identical to the issue previously litigated; (2) the issue must have been actually litigated and determined in the prior proceeding; (3) the issue must have been necessary to the prior proceeding's decision; (4) the prior judgment must be final and valid; and (5) the party against whom preclusion is sought must have had a full and fair opportunity to litigate the issue in the previous suit. *Ramsay v. INS,* 14 F.3d 206, 210 (4th Cir. 1994).

On April 10, 2001, this court found in *Cline I* that San Lin Corporation was, as a matter of law, a related person to Breezy Point as defined by the Coal Act. *Holland v. Cedar Creek Mining, Inc.,* No 2:99-0235 (S.D. W.Va. Apr. 10, 2002) (unpublished). As a related person, San Lin was jointly and severally liable for Breezy Point's obligations under the Coal Act. *Id.* Although the issue of San Lin's liability was decided on a motion for summary judgment, a summary judgment determination satisfies the litigated requirement for collateral estoppel. Restatement (Second) of

Judgments § 27 cmt. d (1982); *See also Wootton Enters. Inc. v. Subaru of Am.* 34 F. App'x. 57, 64 (4th Cir. 2002) (giving collateral estoppel effect to issue decided and "fully litigated at the summary judgment stage"). The determination in *Cline I* that San Lin was a related person to Breezy Point was necessary to find San Lin liable for Breezy Point's Coal Act contributions. Furthermore, this court's related person and consequential liability determinations were reached only after San Lin was provided a full and fair opportunity to refute plaintiffs' accusations. The *Cline I* judgment was final and valid. All elements of issue preclusion are, therefore, satisfied.

This court chose to reserve the question of Cline's individual liability for Breezy Point's owed contributions for trial. Following a trial in which Cline was provided a full a fair opportunity to litigate a defense, this court found Cline to be a related person to Breezy Point and consequently liable for any premiums owed by Breezy Point. *Holland v. Cedar Creek Mining, Inc.,* No 2:99-0235 (S.D. W.Va. Jan. 14, 2002) (unpublished). This court's finding on Cline's related-person status was necessary to hold Cline liable for Breezy Point's owed contributions to the 1992 Plan. Finally, the court's holding was not appealed and is both final and valid. The elements of issue preclusion are met with regard to Cline's classification as a related person for purposes of the Coal Act to Breezy Point and Cline's individual liability for the premium contributions Breezy Point owed to the 1992 Plan.

The doctrine of collateral estoppel precludes relitigation of Cline's and San Lin's status as related persons to Breezy Point. Collateral estoppel also bars relitigation of Cline's and San Lin's liability, as related persons, for the monthly per beneficiary and annual prefunding premiums owed to the Trustees for the beneficiaries attributed to Breezy Point. The nature of the payments, meant to provide lifetime benefits, and the previous *Cline I* judgment are sufficient indicators to the

defendants that payments are continuous.  Further, the defendants have not refuted the plaintiffs'
submitted declaration, which establishes that premiums owed to the 1992 Plan have continued to
accrue and that the defendants have not made payments on post-*Cline I* premiums outside those
included within the *Cline I* judgment.  (Dover Decl. ¶ 6.)

        Applying collateral estoppel, no genuine issue as to any material fact remains on the issue
of the defendants' liability for the premiums Breezy Point owes to the 1992 Plan.  I **FIND** that the
plaintiffs are entitled to judgment as a matter of law for the premiums that have accrued since this
Court's judgment in *Cline I*; the defendants are jointly and severally liable for monthly per
beneficiary premiums owed to plaintiffs for the period of January 15, 2002 through June 15, 2006,
and for annual prefunding premiums due plaintiffs for 2003 through 2006.

## V. Damages

        The plaintiffs seek delinquent Coal Act premiums from the defendants.  Specifically, the
plaintiffs request payment for monthly per beneficiary premiums and annual prefunding premiums
owed to the 1992 Plan that accrued since the judgment in *Cline I*, plus interest and liquidated
damages.  The judgment in *Cline I* covered per beneficiary premiums through December 15, 2001
and annual prefunding premiums through January 15, 2002.

        The court **FINDS** in favor of the plaintiffs on Larry Cline's and San Lin's liability for Breezy
Point's contributions and awards plaintiffs total damages in the amount of $121,075.70 plus
premiums due since February 15, 2006, and interest.[4]  Plaintiffs are granted leave to file their

---

        [4] The $121,075.70 total damages amount includes $85,235.79 for delinquent monthly per
beneficiary premiums plus $8,954.66 in interest, $7,676.00 for annual prefunding premiums due plus
$626.90 in interest and $18,582.36 in liquidated damages

accounting of attorneys' fees and costs within 30 days.  The court **DIRECTS** the parties to submit a summary of total damages including requested liquidated damages, attorneys' fees and costs as of June 21, 2006; the court will enter a judgment order upon receipt of that information.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        June 21, 2006

JOSEPH  R.  GOODWIN
UNITED STATES DISTRICT JUDGE

-10-